An entry may be drawn in conformity to this and the former opinion of the court.

---

## MEANING OF THE WORD "HEIRS" AS USED IN A WILL.

Court of Common Pleas of Cuyahoga County.

CHARLES E. DENLEY, TRUSTEE UNDER THE WILL OF CAROLINE S. WELCH, v. FRANK E. WHEELER, FIELDER SANDERS, ET AL.

Decided, October Term, 1922.

*Wills—Circumstances under Which the Meaning of the Word "Heirs" as Used by a Widow—May be Ascertained by Reference to the Will of her Husband.*

The word "heirs" has a flexible meaning and in wills is sometimes used in the sense of children; and the rule which requires that this word when found in a will shall be given its technical meaning is not of application, where the circumstances surrounding a testatrix at the time of making her will, as well as her manifest intention, require that the word be understood as meaning children; as for example in the case at bar, where the testatrix was evidently desirous of carrying out the intention of her husband, and refers to his will where the word "heirs" is clearly used in the sense of children.

WILLIAMS, J.

There is involved in this case the construction of the last will and testament of Caroline S. Welch who died May 28, 1905,

about 80 years of age, a widow and without children. She executed her last will and testament October 22d, 1900. Her nephew, Harry Sprague, had lived with her previous to his marriage which occurred in June, 1900. During the lifetime of Caroline S. Welch one child was born to Harry Sprague, but it only lived a few hours and he died childless in May, 1918. leaving his widow surviving him. On August 8th, 1913, Harry Sprague by proper proceedings in the proper court of Ashtabula county, Ohio, caused Fielder Sanders to be designated as his heir under the provisions of Section 8598 of the General Code. The last will and testament of Caroline S. Welch contains the following provisions:

Item Eight: * * * To Harry Sprague the use and income during his natural life of another one-third of such remainder and the use and income of the same one-third to Elizabeth Sprague, wife of said Harry Sprague, if she survives him, and after the death of both Harry and Elizabeth the principal sum of said one-third remaining shall go to the heirs of said Harry Sprague.

Item Nine: Whereas devise was made by James S. Welch, my husband, deceased, in his will as recorded in Vol. N, page 251, of the records of Wills in the Probate office of Cuyahoga County, Ohio, and as in item 3 thereof, in which the sum of Ten Thousand ($10,000.00) dollars is to go to Adell Droyn out of his estate and at the death of me Caroline S. Welch, testatrix herein, and all the remainder of his estate save said Ten Thousand Dollars to go to the heirs of Ellen J. Wheeler upon the event of my death.

Now I, the said Caroline S. desire and direct that my executor in this will named fully execute the will of said James S. as set forth in said item 3 therein, and in accordance with the conditions in it made.

It is contended on behalf of Ellen J. Wheeler and her son, Frank B. Wheeler, that where the words "heirs" appears in the last will and testament of Caroline S. Welch, deceased, the testatrix used it in the sense of children, and that since Harry Sprague left no children the devise of the one-third of the residue of the estate will lapse as to the heirs of Harry Sprague and will go to the heirs of the testatrix.

The defendant, Fielder Sanders, maintains that the testatrix used the word "heirs" in its technical sense, and that since he has been designated the legal heir of Harry Sprague he will take such remaining one-third as the heir of Harry Sprague.

The contention of Fielder Sanders is no doubt well founded if the testatrix used the word "heir" in a technical sense. We think the reasoning in the case of *Smith* v. *Hunter*, 86 O. S., 107, would be applicable under such interpretation.

The opposing contention, that the word "heirs" was used by the testatrix in the sense of children, is based upon Item Nine of decedent's will which refers specifically to the will of her husband, James S. Welch, Item Three of whose will reads as follows:

Item 3d.　Of what may remain of said estate at the death of my said wife, Caroline S. Welch, it is my wish and will that $10,000.00 shall go to Adell Sheberlies and any and all amount of said estate over said $10,000 shall go to the heirs of Ellen J. Wheeler and shall become theirs in possession when the youngest child of said Ellen J. shall arrive at lawful age and said minors, if any there be, shall be subject to guardianship until said time.

And in the event of the death of said Adell Sheberlies without leaving issue, then the bequest herein made to her shall go to the heirs of Ellen J. Wheeler and subject to the same control and conditions as the bequest to said heirs as named in this item.

It is very clear that James S. Welch when he referred to the heirs of Ellen J. Wheeler used "heirs" in the sense of children; and it is very plain that Caroline S. Welch when she used the term "heirs" of Ellen J. Wheeler in Item Nine of her will intended to give to the word "heirs" the same meaning as her husband had given it in Item Three of his will.

Where the word "heirs" appears in a will, the principle is well settled that heirs is used in its technical sense, unless a contrary intention appears. However, the word is a flexible one and is frequently used in the sense of children, and if there is anything in the will of the testator to indicate it was used in that sense, that meaning will be given to it in interpretation. *Jones* v. *Lloyd*, 33 O. S., 572; *Weston* v. *Weston*, 38 O. S., 473; *Durfee* v. *MacNeil*, 58 O. S., 238; *Cultice* v. *Mills*, 97 O. S., 112.

The authorities, however, lay down the rule that the interpretation of a will must be based upon the language of the will itself, and the meaning of the testator must be gleaned from the four corners of the instrument. To do this, however, the court should put itself in the position of the testator at the time

the will was executed so that the court may interpret the will in the light of all the surrounding circumstances known to the testator at that time. We quote the following from 28 R. C. L., 270·

While parol evidence is not admissible to show what a testator intended to write, it may be admitted in a proper case, where the effect of it is merely to explain or make certain what he has written. In ascertaining the testator's intent the words of the will are to be read in the light of the circumstances under which it was written, and the court may put itself in the place of the testator for the purpose of determining the objects of the testator's bounty or the subject of disposition. It is proper to take into consideration all the circumstances under which the will was executed. including the condition, nature and extent of the testator's property, and his relations to his family and to the beneficiaries named in the will. Even the motives which may reasonably be supposed to operate with him and influence him in the disposition of his property are entitled to consideration in ascertaining the meaning of the testator. So evidence is admissible as to the circumstances surrounding the subject matter of the gift. Accordingly the courts in construing a will have taken into consideration such matters as the financial condition of the beneficiary, when it appears that this was known to the testator.

In the case of *Stewart* v. *Powers*, 9 C. C., 143, the court held it was proper to admit evidence to show who the heirs of certain persons named in the description of the property were for the purpose of making clear in what sense the testator used the word "heir," and as the heirs were the children of the parties named the court held that the testator used the word "heirs" in that sense.

Therefore, we may look to the will of James S. Welch to which the testatrix referred for the purpose of determining in what sense of the word "heir" was used. As before indicated, it is apparent that the testatrix used "heirs" in the same sense in which James S. Welch used it in his will; that is in the sense of children. We therefore conclude that the devise to the heirs of Harry Sprauge lapsed and that the interest which they would have taken passes to the heirs of the testatrix. A. decree may be enacted accordingly.